UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MONEICA DENISE WEBSTER,

    Plaintiff,

*v*.                              CASE NO. 08-CV-11181

COMMISSIONER OF            DISTRICT JUDGE ROBERT H. CLELAND
SOCIAL SECURITY,             MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II. REPORT

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability, Disability Insurance Benefits and Supplemental Security Income benefits. This matter is currently before the Court on Defendant's motion for summary judgment. (Dkt. 13.) The Scheduling Order entered in this case directed the *pro se* Plaintiff to file a motion for summary judgment on or before July 25, 2008. (Dkt. at 9.) After extensions, Plaintiff was given until November 14, 2008 to reply to the Defendant's motion. (Dkt. at 11.). No pleadings have been filed by Plaintiff, nor has Plaintiff filed any motion seeking an extension of time in which to file her motion and brief. Accordingly, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), this case is ready for Report and Recommendation without oral argument.

Plaintiff was 37 years of age at the time of the most recent administrative hearing, which was the third supplemental hearing held on April 3, 2006. (Transcript, Dkt. 7 at 17, 89.) Plaintiff's relevant employment history included work as a mail handler, a maintenance person, a cashier, and a security guard at the Detroit Zoo. (Tr. at 94.) Plaintiff last worked in December of 1998. (*Id.*)

Plaintiff filed the instant claim on January 25, 2001, alleging that she became unable to work on February 28, 1999. (Tr. at 89.) The claim was denied at the initial administrative stages. (Tr. at 82, 87.) In denying Plaintiff's claims, the Defendant Commissioner considered disorders of back, discogenic and degenerative, and obesity as possible bases of disability. (Tr. at 82.) Plaintiff requested a hearing before an Administrative Law Judge. (Tr. at 87.)

Plaintiff first appeared for hearing April 2, 2003. (Tr. at 17.) Counsel for Plaintiff asked for additional time to submit additional evidence. In the process, the case was reassigned to Administrative Law Judge Manuel J. Carde, who held a hearing on March 30, 2004. (*Id.*) Counsel for Plaintiff again asked for additional time and a supplemental hearing was held November 29, 2004. After receipt of additional medical evidence, a second supplemental hearing was held April 13, 2005 (*Id.*) On April 3, 2006, Plaintiff again appeared with counsel before the ALJ, after the receipt of more medical evidence. Vocational and Medical expert witnesses also testified. In a decision dated May 25, 2006, the ALJ denied both Plaintiff's claims, finding first that as to her claim for disability benefits, Plaintiff was not disabled within the meaning of the Social Security Act as of the last date she met the disability insured status requirements, i.e., September 30, 2000. (Tr. at 14-37.) After a review of the evidence and testimony pertaining to Plaintiff's claim for Supplemental Security Income benefits, the ALJ made a similar finding as to this claim. (*Id.*) Plaintiff requested a review of this decision on July 24, 2006. (Tr. at 12.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on February 1, 2008, when, after the review of additional exhibits[2] (Tr. at 7, 1293-1302), the Appeals Council denied Plaintiff's request for review. (Tr. at 8-10.) On March 19, 2008, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Dkt. 1.)

**B.     Standard of Review**

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531

("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record,

regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C. Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

**D.     Administrative Record**

A review of the relevant medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff sought treatment with Dr. J. Alan Robertson. Dr. Robertson treated Plaintiff, on a monthly basis, for back, neck, and shoulder injuries due to a motor vehicle accident that occurred on February 25, 1999, and helped manage Plaintiff's asthma, diabetes, and gastrointestinal reflux disorder. (Tr. at 481.) Dr. Robertson noted that the injuries produced lower back "sprain-strain," neck "cervical sprain-strain" and "low-grade cervical radiculopathy" and shoulder "impingement," "bicipital tenosynovitis," and morbid obesity.[3] (Tr. at 214, 218, 222, 226, 229, 237, 242, 246, 252, 256, 263, 269, 273, 278, 282, 288, 298, 304, 309, 313, 318, 325, 335, 342, 346, 352, 359, 364, 368, 374, 380, 384, 387, 392, 396, 400, 405, 417, 424, 427, 433, 438, 442, 446, 453, 462, 468, 501, 506, 512, 519, 587, 606, 610, 612, 614, 618, 620, 622, 624, 633, 637, 641, 645, 652, 658, 761, 765, 769, 773, 777, 784, 789, 808, 813, 817, 821, 916, 919, 922, 926, 931, 935, 939, 943, 947, 961, 1190, 1193, 1206, 1253, 1264, 1272, 1275, 1277.) Plaintiff was given pain prescriptions, as well as trigger point injections, spinal manipulations, and myofascial release techniques. (E.g., Tr. at 319, 786, 797.)

Plaintiff also underwent physical therapy on at least two occasions. (Tr. at 271-470, 518.) In August 2001, Plaintiff underwent an upper GI study. (Tr. at 992.) In January 2003, Plaintiff was referred for bariatric surgery. (Tr. at 499-500.) In June 2004, Plaintiff underwent esophagogastroduodenoscopy testing. (Tr. at 1028.) In June 2005, Plaintiff was examined at the request of the Disability Determination Service by Dr. Cynthia Shelby-Lane, M.D. (Tr. at 706-714.) In October and December 2005, Plaintiff underwent cardiac testing. (Tr. at 1187, 1285-87.)

---

[3]Plaintiff testified that she is five feet two inches tall and weighed around 260 pounds at the time of the hearing. (Tr. at 1312.)

### E. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged amended onset date. (Tr. at 36.) At step two, the ALJ found that Plaintiff's insulin-dependent diabetes mellitus, hypertension, obesity, asthma, injuries to the neck, back and right shoulder as a result of an automobile accident, small herniated disc in the thoracic spine at T3-4, some right shoulder glenohumeral joint impingement, right bicipital tendonitis, left carpal tunnel syndrome, C8 and T1 radiculopathy, gastrointestinal reflux disease, a small hiatal hernia, hyperlipidemia, a history of gastric ulcers, chest pain, atypical, metabolic syndrome, and hypercholesterolemia were "severe" within the meaning of the second sequential step. (Tr. at 36.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff was unable to perform her previous work as a mail handler or carrier or maintenance person. (*Id.*) At step five, the ALJ found that Plaintiff is a younger individual with more than a high school education and no transferrable skills from semi-skilled or skilled work previously performed, that Plaintiff has the residual functional capacity to perform sedentary work, and that a finding of "not disabled" is directed by the relevant vocational rules. (*Id.*) After citing the Commissioner's grid rules, the ALJ then found that there are thousands of sedentary jobs in the national economy which Plaintiff could perform including 11,558 credit interviewers, 37,000 receptionists/information clerks, 39,000 interviewers (excluding loan applications), and 13,156 hand packagers. (*Id.*)

### F. Analysis and Conclusions

#### 1. Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity (RFC) to perform sedentary work. Sedentary work involves lifting no more than ten pounds at a time and occasional lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (1991). Social Security Ruling (SSR) 83-10 clarifies this definition and provides that:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

After review of the record, I suggest that the ALJ utilized the proper legal standard in the application of the Commissioner's five-step disability analysis to Plaintiff's claim.

## 2. Disability Insurance Benefits Claim - Expiration of Eligibility for Benefits

Both at the administrative hearing and in his Decision, the ALJ found that Plaintiff's eligibility for benefits expired on September 30, 2000. (Tr. at 36.) In order to be eligible for disability benefits, a person must become disabled during the period in which he or she has met the statutory special earnings requirements. 42 U.S.C. §§ 416(i), 423(c)(1)(B)(i). It is improper for an administrative law judge to concentrate on a claimant's abilities and condition at the date of hearing, rather than during the time period when the plaintiff met the special earnings' requirements. *Davis v. Califano*, 616 F.2d 348 (8th Cir. 1979). *See also Mohr v. Bowen*, No. 87-1534, 1988 WL 35265, at *2 (6th Cir. April 21, 1988). In this circuit, to qualify for social security disability benefits, disability must be proven to exist during the time the plaintiff was insured within the meaning of the special insured status requirements of the Act; if the plaintiff becomes

10

disabled after the loss of insured status, the claim must be denied even though the plaintiff has indeed become disabled. *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *Estep v. Weinberger*, 525 F.2d 757 (6th Cir. 1975). Thus, as a general rule, the only medical evidence relevant to the issue of disability is that medical evidence dealing with a claimant's condition during the period of insured status.

In *Begley v. Mathews*, 544 F.2d 1345 (6th Cir. 1976), the court held, however, that "[m]edical evidence of a subsequent condition of health, reasonably proximate to a preceding time, may be used to establish the existence of the same condition at the preceding time." *Id*. at 1354. Directly on point, the Sixth Circuit held in *Higgs*, 880 F.2d at 863, that the Commissioner must consider medical evidence of a claimant's condition after her date last insured to the extent that the evidence is relevant to the claimant's condition prior to the date last insured.

In this case, the ALJ considered medical evidence beyond the benefits expiration date. (Tr. at 22-35.) On the basis of the Social Security Act and *Estep*, which controls in this circuit, I conclude that the ALJ was more than generous in considering later medical evidence.

### 3. Substantial Evidence

#### a. Disability Insurance Benefits Claim

As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

In September of 1997, a barium enema exam revealed "[n]o mucosal abnormality or mass lesion was identified within the colon." (Tr. at 1128.) An ultrasound of Plaintiff's abdomen was

performed in February of 2001 for potential gallstones which showed Plaintiff's gallbladder and common duct were "normal." (Tr. at 994-96.)

When Plaintiff was discharged from physical therapy on July 22, 1999, it was noted that "[a]ll initial therapy goals have been met," Plaintiff's prognosis was "good," and she was "advised as to the need for continued performance of her home exercise program to maintain gains while in therapy." (Tr. at 436.) Plaintiff was sent back to physical therapy by Dr. Robertson in September of 1999. (Tr. at 414-15, 418.) A progress report dated January 3, 2000, indicates that Plaintiff "made overall improvements during therapy." (Tr. at 379.) Upon discharge on January 13, 2000, the therapist notes that Plaintiff's prognosis is "good to fair" and that she "has made several overall improvements during therapy, but has reached her maximum medical benefits with PT at this time." (Tr. at 373.)

Plaintiff underwent an MRI in September of 1999, which revealed "no evidence of a herniated cervical disc" and "some very minimal posterior spondylotic spurring change evident at multiple levels." (Tr. at 422.) In addition, the MRI showed "a small central disc herniation at T3-4 and there is some very minimal posterior spondylitic spurring at T2-3" but "[t]here is no evidence of compression of the cervical spinal cord or upper thoracic spinal cord and there are no abnormal signal changes or expansile lesions seen in the cervical spinal cord or upper thoracic spinal cord." (Tr. at 423.)

By July of 2000, Plaintiff's back spasms and tightness had decreased (Tr. at 516) and she was reporting her pain level at 3-4 out of 10. (Tr. at 517.) A scan of Plaintiff's left ankle and foot taken in August of 2000 showed "no fracture or dislocation nor any demonstrable bony abnormality." (Tr. at 993.)

  b. **Supplemental Security Income Benefits Claim**

In August of 2001, an upper GI study with abdomen showed a "small hiatal hernia with minimal gastroesophageal reflux." (Tr. at 992.) These results were consistent with radiological test performed in February of 1999. (Tr. at 1002.)

Plaintiff also participated in physical therapy for cervical pain treatment from 1999 to 2002. (Tr. at 271-470, 518.)

A Residual Functional capacity (RFC) assessment was completed on July 31, 2001 (Tr. at 166-73. The assessment concluded that Plaintiff was able to lift up to 20 pounds occasionally, up to 10 pounds frequently, stand or walk about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and could push or pull without limitation. (Tr. at 167.) It was also found that Plaintiff would be occasionally limited in the postural area but that Plaintiff was not limited in the manipulative, visual, communicative or environmental areas other than that Plaintiff should avoid concentrated exposure to fumes. (Tr. at 168-70.) Plaintiff's treating physician, Dr. Robertson, also completed a residual functional capacity questionnaire where he indicated that Plaintiff has "intercostal radiation without interrupt" and he estimated that Plaintiff could sit for 30 minutes at a time, stand for fifteen minutes at a time sit or stand/walk for about 2 hours out of an 8-hour workday, and that she would need to walk for about 5 minutes every 30 minutes. (Tr. at 580-82.)

In February of 2002, Dr. Robertson noted that Plaintiff demonstrated "increased tolerance to standing and walking" (Tr. at 244,) and by August of 2002, Plaintiff indicated to Dr. Robertson that she was "walking three miles daily" even though her pain was "about the same." (Tr. at 237.)

In March of 2003, Dr. Robertson completed a Residual Functional Capacity questionnaire indicating that Plaintiff had "intercostal radiation without interrupt" but that she could sit at one time for 30 minutes, stand at one time for 15 minutes, that she needed to include periods of

walking around every 30 minutes for 5 minutes during an 8-hour workday, and that Plaintiff needs to shift positions at will and take unscheduled breaks. (Tr. at 954-55.) At that same time, Dr. Robertson completed a form indicating that Plaintiff's "HNP T3-4" disorder of the spine resulted in nerve root compression intercostal radiation of pain that equals the "Spinal Nerve Root Compression" Listing § 1.04A. (Tr. at 957-58.)

In April of 2003, Dr. Robertson referred Plaintiff for an evaluation at the Clegg Guest and Brabant Physical Rehabilitation center. (Tr. at 593-99.) It was noted that Plaintiff's "[c]oordination, smoothness, and posturing were intact though client demonstrated decreased speed." (Tr. at 593-94.) The evaluation concluded that Plaintiff met the U.S. Department of Labor demand level for sedentary work. (Tr. at 594.)

Plaintiff was referred by Dr. Robertson to Michael H. Wood, M.D., for bariatric surgery in January of 2003. (Tr. at 499-500.) It appears that Plaintiff did not undergo that surgery. In June of 2003, Plaintiff's gastric antrum tissue was examined revealing "[m]ild to moderate chronic gastritis," and "[m]ild gastric atrophy." (Tr. at 667, 781, 1242.)

In June of 2004, an esophagogastroduodenoscopy was performed which revealed a "small sliding hiatal hernia" and "no endoscopic evidence of ulcer disease or esophagitis" and recommended that the Plaintiff "lose weight." (Tr. at 1028.)

In November of 2004, Plaintiff sought treatment for her blood sugar level at St. John Medical Center and was advised, upon discharge, to fill all prescriptions, monitor blood sugar levels, and manage her diet. (Tr. at 795.) Dr. Durga Mulpuri, M.D., noted, in that same month, that Plaintiff's medications for diabetes had been maximized and that Plaintiff had been advised as to "the impact of diet." (Tr. at 719, 825, 951, 1195.) Dr. Mulpuri gave Plaintiff the same advice in March of 2006. (Tr. at 1291.)

In January of 2005, an echogram of the "[v]isible portion of the kidneys revealed no gross abnormalities on the present examination." (Tr. at 1220.)

In June of 2005, Plaintiff was examined, at the request of Disability Determination Services, by Dr. Cynthia Shelby-Lane, M.D.. Dr. Shelby-Lane concluded that Plaintiff's diabetes was in "need of better management," that her hypertension was "under good control," that she uses inhalers for asthma, that she continues to have back and neck pain, that she "need[s] better management of her weight," and that she wears splints for carpal tunnel syndrome at home and that a range of motion sheet was included. (Tr. at 706-07.) The range of motion sheet showed Plaintiff demonstrated normal range in the movement of her back and all extremities. (Tr. at 712.) Plaintiff was able to walk on heels and toes and in tandem. (Tr. at 710.) Plaintiff's reflexes and abilities to stand, bend, stoop, carry, push, pull, dress, pick up coins, etc., were all normal. (Tr. at 711.) It was also determined that Plaintiff can lift up to 10 pounds frequently, and 21-25 pounds occasionally, that she can carry up to 10 pounds frequently, that Plaintiff can use her hands for repetitive and manipulative actions (Tr. at 713,) that she can occasionally bend, squat, crawl, climb and reach, but that she was moderately limited in unprotected heights, being around moving machinery, and being exposed to dust and fumes. (Tr. at 714.)

In August of 2005, Dr. Shelby-Lane was also asked to determine why Plaintiff's blood sugar levels had been so high and Dr. Shelby-Lane noted that Plaintiff's has "very poor control," that Plaintiff "states she is following her diabetic diet as closely as possible," but "[t]here is no further indication as to why her diabetes and her blood sugar levels have been so high" so the cause is "unknown." (Tr. at 717-18.)

After having been admitted to the hospital based on chest pain in October of 2005 (Tr. at 1187,) Plaintiff underwent a Treadmill Exercise Electrocardiogram test which was interpreted as

15

showing "[n]on-ischemic ECG response to exercise at the submaximal heart rate achieved." (Tr. at 966, 1185.) The report noted that "[f]ailure to reach the target heart rate may relate to difficulty exercising. Reduced heart rate response using heart rate reserve criteria." (*Id.*) The report also noted "[n]ormal heart rate recovery." (*Id.*) An x-ray of the chest taken in October of 2005 was "unremarkable." (Tr. at 1184.)

In December of 2005, after having been referred to Dr. Vamshidhar Guduguntla (Tr. at 1288-89,) Plaintiff underwent a cardiac catherization procedure which "revealed no significant coronary artery disease with normal left ventricular function." (Tr. at 1285-87.) In January of 2006, Dr. Guduguntla recommended Plaintiff "follow a low-cholesterol, low-salt, low-calorie diet" and "increase her exercise capacity and lose several pounds in weight." (Tr. at 1290.)

### c. Administrative Hearing Testimony

At the April 2, 2003, administrative hearing, Plaintiff testified that she does her own cooking, washes dishes, makes her own bed, goes grocery shopping, and drives (Tr. at 1330-32.) Plaintiff further testified that her neck bothers her after sitting for one-half hour, that she can only stand for up to an hour before her back and legs bother her, and that she can only walk for around one-half block before she has to stop due to cramps in her legs. (Tr. at 1334-35.) Plaintiff indicated that she believed she could lift up to ten pounds and could carry that same weight across the room. (Tr. at 1335.) A vocational expert also testified at the administrative hearing on April 2, 2003. (Tr. at 1359-65.) In response to a hypothetical question presuming a person of Plaintiff's background, and assuming the person could perform only sedentary unskilled work, the VE testified that there are roughly 7,000 jobs for our region. (Tr. at 1363-64.) On March 30, 2004, the ALJ noted there was no medical evidence of any treatment for carpal tunnel syndrome and the ALJ posited that Plaintiff's use of a prescribed steroid when her "lungs squeeze," may have created a

16

"diabetes-like" condition and he indicated he would allow Plaintiff to return with medical evidence on these questions. (Tr. at 1400-02.) On November 29, 2004, another hearing was held (Tr. at 1412-27.) Then on April 13, 2005, Plaintiff was still unable to offer the testimony of an internist or other doctor that could testify as to these questions concerning the cause of Plaintiff's diabetes. (Tr. at 1440.)

At the April 2006 hearing, Dr. Arthur Lorber, M.D., testified that Plaintiff's medical conditions would not prevent her from working at a light exertion level. (Tr. at 1457.) He clarified that, due to her obesity, she should not climb ladders or scaffolds. (*Id.*) In addition, Dr. Paul Boyce, M.D., testified that due to the fatigue that occurs in people with diabetes, Plaintiff could perform sedentary work only. (Tr. at 1456.) At this same hearing in April of 2006, a VE testified that there are numerous sedentary unskilled jobs available in the national economy including, 11,558 credit authorizers, checkers and clerks, 97,334 receptionist and information clerk jobs, 39,950 interviewer jobs (excluding those that deal with loan eligibility and loan applications), and 13,156 hand packer and packager jobs. (Tr. at 1462.)

### d. Conclusions

Although there is some evidence to the contrary (Tr. at 667, 781, 957-58, 1242, 1365,) I suggest that the evidence of record summarized above constitutes substantial evidentiary support for the ALJ's findings of nondisability. The ALJ did not find Plaintiff's allegations of disabling pain fully credible. Social Security regulations prescribe a two-step process for evaluating subjective complaints of pain. First, the plaintiff must establish an underlying medical condition and, second, there must be either objective medical evidence to confirm the severity of the alleged pain rising from the condition or the objectively-determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. §

404.1529(b); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate his symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.* An ALJ may give also less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645, at **3 (6th Cir. Ohio Feb. 11, 1999).

In the present case, the ALJ acknowledged that Plaintiff had an impairment that could cause pain; however, he found that the severe and debilitating nature of Plaintiff's alleged pain was not fully credible and provided reasons for this conclusion. The issue is whether the ALJ's credibility determinations are supported by substantial evidence. An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Under this standard, I suggest that there is insufficient basis on this record to overturn the ALJ's credibility determination.

The ALJ's findings also follow the opinions of the vocational and experts which came in response to appropriate questions that accurately portrayed Plaintiff's condition, as well as the daily activities described by Plaintiff himself. (Tr. at 1452-1457.) *See Griffeth v. Comm'r of Soc.*

*Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

I further suggest that the ALJ properly discounted Dr. Robertson's opinion that Plaintiff was disabled from all manual activity because it was not consistent with the other substantial evidence in the case record and Plaintiff's own statements regarding her ability to walk and perform other daily activities. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2); (Tr. at 237, 244, 1330-32.) Nor was this conclusion consistent with Dr. Robertson's oft repeated comment that Plaintiff could attend the "Work First" program which he described as "nothing more than a bureaucratic game requiring individuals to come to a room and sit throughout the day." (Tr. at 366, 370, 376, 381, 387, 393, 398, 401, 407.)

After review of this record, I suggest that substantial evidence supports the ALJ's findings and conclusions. The ALJ's findings upon which they are based are, I suggest, consistent with the relevant medical evidence of record as well as the testimony of the medical expert, the vocational expert, and the Plaintiff herself. *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). I therefore conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure

to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                          s/ *Charles E Binder*
                          CHARLES E. BINDER
Dated: December 22, 2008          United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Stephen P. Cares and the Commissioner of Social Security, served on Moneica Denise Webster via first class mail at 15900 Rossini, Detroit, MI 48205-4404, and served on District Judge Cleland in the traditional manner.

Date: December 22, 2008        By    s/Patricia T. Morris
                                                    Law Clerk to Magistrate Judge Binder